Kathleen J. Abke, #12422
Savanna Jones, #17624
STRONG & HANNI
102 South 200 East, #800
Salt Lake City, UT 84111
Telephone: 801-532-7080
Facsimile: 801-596-1508
kabke@strongandhanni.com
sjones@strongandhanni.com
*Attorneys for Plaintiffs*

UNITED STATES DISTRICT COURT

DISTRICT OF UTAH, SOUTHERN DIVISION

| | |
|---|---|
| CAROL P. and J.P.,<br><br>　　　　Plaintiffs,<br><br>vs.<br><br>TRULIANT FEDERAL CREDIT UNION; the TRULIANT FEDERAL CREDIT UNION EMPLOYEE HEALTH PLAN; and BLUE CROSS BLUE SHIELD OF NORTH CAROLINA,<br><br>　　　　Defendants. | **COMPLAINT**<br><br>Case No. 4:22-cv-00034 -DN<br><br>Judge David Nuffer |

COME NOW Carol P. and J.P., (collectively, "Plaintiffs"), by and through their undersigned counsel, complain and allege against the above-captioned Defendants as follows:

**PARTIES, JURISDICTION, AND VENUE**

1.　　Plaintiffs Carol P. ("Carol") and J.P. are natural persons residing in Charlotte, North Carolina. Carol is J.P.'s mother.

2. Blue Cross and Blue Shield of North Carolina ("BCBSNC") is an independent licensee of the nationwide Blue Cross and Blue Shield Association. BCBSNC was the third-party claims administrator, as well as the fiduciary under ERISA, for the Truliant Federal Credit Union Employee Health Plan (the "Plan") during the treatment at issue in this case.

3. The Plan is a self-funded employee benefit plan governed by the Employment Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §1001, *et seq*. Carol was a participant in the Plan and J.P. was a beneficiary of the Plan at all relevant times.

4. From July 21, 2020 through October 31, 2020, J.P. received medical care and treatment at Evoke at Entrada ("Evoke"), a licensed and accredited inpatient youth treatment facility in Washington County, Utah.

5. Evoke provides sub-acute inpatient treatment to adolescents with mental health, behaviors, and/or substance abuse problems.

6. BCBSNC denied claims for payment of J.P.'s medical expenses in connection with his treatment at Evoke.

7. This Court has jurisdiction over this matter and venue is appropriate pursuant to 29 U.S.C. § 1132(e)(1) and 28 U.S.C. § 1331.

8. Venue is appropriate under 29 U.S.C. § 1132(e)(2) and 28 U.S.C. § 1391(c) based on ERISA's nationwide service of process and venue provisions and because BCBSNC routinely does business in Utah and across the United States through its network of affiliates. In addition, the care at issue was provided at a Utah-licensed inpatient treatment facility, and it is Plaintiffs' wish that the matter be litigated in Utah based on the increased possibility that the anonymity of J.P. is preserved, the Plaintiffs' convenience and having access to counsel proficient in this area of law.

9. Plaintiffs seek remedies under the terms of ERISA and under the Plan for benefits due under the terms of the Plan, and 29 U.S.C. § 1132(a)(1)(B), for appropriate equitable relief pursuant to 29 U.S.C. §1132(a)(3) for Defendants' violations of the Mental Health Parity and Addiction Equity Act of 2008 (the "MHPAEA"), an award of prejudgment interest, and attorney's fees pursuant to 29 U.S.C. § 1132(g).

## GENERAL ALLEGATIONS

10. J.P. sought treatment at Evoke for depression, generalized anxiety disorder, substance use disorders, and ADHD, as well as other behavioral and family relationship issues. J.P. was admitted to Evoke on July 21, 2020.

11. During his treatment at Evoke, J.P. participated in individual psychotherapy sessions and group therapy with licensed mental health counselors. An individualized treatment plan was developed and J.P.'s progress was overseen by licensed counselors.

12. J.P. made significant progress while at Evoke with his depression, anxiety and other behavioral issues and was discharged from treatment on November 24, 2020.

13. Evoke is an outdoor behavioral health program and is classified as an intermediate level of care because they offer services which are less intensive than acute hospitalization but not more intensive than outpatient treatment.

14. The Plan provides benefits for the treatment of mental illness and substance abuse by a Hospital, Residential Treatment Facility, Doctor or Other Provider.

15. The Plan defines a "Residential Treatment Facility" as a facility that either: "(1) offers treatment for patients that require close monitoring of their behavioral and clinical activities related to their chemical dependency or addiction to drugs or alcohol, or (2) offers treatment for patients that require psychiatric services for the diagnosis and treatment of MENTAL ILLNESS.

All services performed must be within the scope of license or certification to be eligible for reimbursement"

16. The Plan defines "provider" as "A HOSPITAL, NONHOSPITAL FACILITY, DOCTOR, or OTHER PROVIDER, accredited, licensed or certified where required in the state of practice, performing within the scope of license or certification. All services performed must be within the scope of license or certification to be eligible for reimbursement."

17. The plan defines "facility services" as "COVERED SERVICES provided and billed by a HOSPITAL or NONHOSPITAL FACILITY. All services performed must be within the scope of license or certification to be eligible for reimbursement."

18. Evoke submitted claims to the Plan for J.P.'s treatment at Evoke.

19. On December 3, 2020, BCBSNC denied coverage, stating that for treatment under code ENB, which states: "Service is not covered for either the primary diagnosis or service code listed."

20. In response, Evoke submitted corrected claims to add additional primary diagnosis codes.

21. In February 2021, BCBSNC again denied coverage for treatment under the same code ENB as its previous denial.

22. On May 5, 2021, Carol timely submitted a Level One Member Appeal to BCBSNC.

23. In her appeal, Carol argued that J.P.'s treatment at Evoke is covered under the Plan. Carol explained that Evoke qualifies as a Provider under the Plan and that Evoke provides Facility Services, as defined under the Plan, through outdoor behavior healthcare. According to the Summary Plan Description, there are no exclusions for intermediate behavior health treatment or outdoor behavior healthcare.

24. Further, Carol provided a copy of Evoke's outdoor youth treatment licensure. Carol further explained that the treatment provided to J.P. was provided within the scope of Evoke's license or certification.

25. Carol also reminded BCBSNC of her rights under both ERISA and MHPAEA. Specifically, she advised BCBSNC that plans such as the Plan that offer behavioral health benefits are required to offer those benefits at parity with comparable medical or surgical benefits and that MHPAEA requires coverage for intermediate facilities such as Evoke.

26. On June 4, 2021, the Plan sent a letter to Carol denying the May 5, 2021 Level One Member Appeal, stating that Evoke is "not licensed as an inpatient mental health facility. This is an outdoors wilderness therapeutic camp. The claims for these services denied as noncovered correctly."

27. J.P. was treated at a licensed, regulated, and accredited facility, which offers patients therapeutic treatment using well known therapeutic models and would be covered in any alternate intermediate level of care setting.

28. According to the Summary Plan Description, "if the Plan is subject to ERISA, [the covered individual] must exhaust only the first level appeal process before bringing any legal action to recover benefits." Thus, Plaintiffs have exhausted their administrative remedies and are now entitled to bring this ERISA action against Defendants.

## FIRST CAUSES OF ACTION

### (Claim for Benefits Under 29 U.S.C. § 1132(a)(1)(B))

29. Defendants incorporate by reference paragraphs 1-24, above.

30. ERISA imposes higher-than marketplace standards on the insurers, plan administrators and other ERISA fiduciaries. It sets forth a special standard of care upon a plan

fiduciary like BCBSNC, acting as an agent of the Plan, that the administrator discharges all plan duties solely in the interest of the participants and beneficiaries of the plan and for the exclusive purpose of providing them benefits. 29 U.S.C. § 1104(a)(1).

31. Defendants breached their fiduciary duties to J.P. when they failed to comply with their obligations under 29 U.S.C. §§ 1104 and 1133 to act solely in J.P.'s interest and for the exclusive purpose of providing benefits to ERISA participants and beneficiaries and to provide a full and fair review of J.P.'s claims.

32. Defendants failed to provide coverage for J.P.'s treatment in violation of the express terms of the Plan.

33. ERISA emphasizes accurate claims processing and evaluation by requiring that plan administrators provide a "full and fair review" of claim denials. 29 U.S.C. § 1133(2).

34. BCBSNC's denial letters fail to evidence that it conducted a meaningful analysis of Plaintiffs' appeals or whether Defendants provided Plaintiffs with the "full and fair review" to which they are entitled. BCBSNC failed to substantively respond to the issues presented in Carol's appeal and did not in any way address the arguments and concerns raised during the prelitigation appeals process.

35. BCBSNC acted in an arbitrary and capricious manner by failing to provide a consistent justification for why it had denied Plaintiffs' claims for treatment.

36. BCBSNC and the agents of the Plan breached their fiduciary duties to Plaintiffs when they failed to comply with their obligations under 29 U.S.C. §§ 1104 and 1133 to act solely in Carol's and J.P's interests and for the exclusive purpose of providing benefits to ERISA participants and beneficiaries and to provide a full and fair review of Plaintiffs' claims.

37.

## SECOND CAUSE OF ACTION

### (Claim for Violation of the MHPAEA under 29 U.S.C. § 1132(a)(3))

38. Defendants incorporate by reference paragraphs 1-32, above.

39. MHPAEA is incorporated into ERISA and is enforceable by ERISA participants and beneficiaries as a requirement of both ERISA and the MHPAEA. The obligation to comply with both ERISA and MPAEA is part of BCBSNC's fiduciary duties.

40. MHPAEA requires ERISA plans to provide coverage for mental health treatment and substance use disorders that is no less generous or favorable than that provided for treatment of medical/surgical disorders and conditions.

41. MHPAEA prohibits ERISA plans from imposing treatment limitations on mental health or substance use disorder benefits that are more restrictive than the predominant treatment limitations applied to substantially all medical and surgical benefits covered by ERISA plans and from imposing separate treatment limitations that are applicable only with respect to mental health or substance use disorder benefits. 29 U.S.C. § 1185(a)(3)(A)(ii).

42. MHPAEA requires that if a group health plan provides both medical and surgical benefits as well as mental health or substance use disorder benefits, then it may not apply any "treatment limitation to mental health or substance use disorder benefits in any classification that is more restrictive than the predominant . . . treatment limitation of that type applied to substantially all medical/surgical benefits in the same classification." 29 C.F.R. § 2590.712(c)(2)(i) (amended Jan. 13, 2014); *see also* IFRs Under the MHPAEA, 75 Fed. Reg. at 5413.

43. Examples of improper nonquantitative treatment limitations ("NQTLs") under MHPAEA include, but are not limited to: medical management standards limiting or excluding benefits based on medical necessity; restrictions based on geographic location; facility type,

provider specialty; and other criteria that limit the scope or duration of benefits for mental health or substance use disorder treatment. 29 C.F.R. § 2590.712(c)(4)(ii)(A) and (H).

44. BCBSNC denied Plaintiffs' claims for intermediate behavioral health for services that were clearly covered by the Plan and Evoke met all of the Plan's requirements to be considered an eligible facility. By ignoring the terms and conditions of the Plan, BCBSNC imposed improper as-applied facility type NQTLs on Plaintiffs' claims from Evoke.

45. The Plan offers comparable benefits for medical/surgical treatment that the Plan excluded for J.P.'s treatment, including sub-acute inpatient treatment settings including skilled nursing facilities, inpatient hospice care, and rehabilitation facilities. BCBSNC only requires that these analogous medical/surgical treatment facilities operate within the scope of their licenses. As Carol repeatedly showed, Evoke was operating within the scope of its state licensure at all times relevant to J.P.'s care, yet BCBSNC applied the identical criteria more stringently or restrictively than the Plan applies to intermediate level medical or surgical benefits.

46. Specifically, the Plan's reviewers utilized internal processes and procedures that may have placed a limitation on the scope of services available for intermediate behavioral health care, while not limiting the scope of services available for intermediate medical or surgical benefits.

47. When the Plan receives claims for intermediate level treatment of medical and surgical conditions, they provide benefits and pay the claims as outlined in the terms of the Plan based on generally accepted standards of medical practice. The Plan evaluated J.P.'s mental health claims using covered services criteria that deviate from generally accepted standards of medical practice. This process resulted in a disparity because the Plan denied coverage for mental health benefits when the analogous levels of medical or surgical benefits would have been paid.

8

Case 3:22-cv-00356-RJC-DSC   Document 2   Filed 05/31/22   Page 8 of 10

48. In this manner, the Defendants violate 29 C.F.R. § 2590.712(c)(4)(i) because the terms of the Plan and the coverage criteria utilized by the Plan, as written or in operation, use processes, strategies, standards, or other factors to limit coverage for mental health or substance use disorder treatment in a way that is inconsistent with, and more stringently applied, than the processes, strategies, or other factors used to limit coverage for medical/surgical treatment the same classification.

49. The violations of the MHPAEA by the Plan give the Plaintiffs the right to obtain appropriate equitable remedies as provided under 29 U.S.C. § 1132(a)(3) including, but not limited to:

    a. A declaration that the actions of the Defendants violate the MHPAEA;

    b. An injunction ordering the Defendants to cease violating the MHPAEA and requiring compliance with the statute;

    c. An order requiring the reformation of the terms of the Plan and the medical necessity criteria utilized by the Defendants to interpret and apply the terms of the Plan to ensure compliance with the MHPAEA;

    d. An order requiring disgorgement of funds obtained by or retained by the Defendants as a result of their violations of the MHPAEA;

    e. An order requiring an accounting by the Defendants of the funds wrongly withheld by each Defendant from participants and beneficiaries of the Plan and other Blue Cross Blue Shield of North Carolina insured and administered plans as a result of the Defendants' violations of the MHPAEA;

    f. An order based on the equitable remedy of surcharge requiring the Defendants to provide payment to the Plaintiffs as make-whole relief for their loss;

g. An order equitably estopping the Defendants from denying the Plaintiffs' claims in violation of the MHPAEA; and

h. An order providing restitution from the Defendants to the Plaintiffs for their loss arising out of the Defendants' violation of the MHPAEA.

50. In addition, Plaintiffs are entitled to an award of prejudgment interest pursuant to U.S.A. § 15-1-1, and attorney fees and costs pursuant to 29 U.S.C. § 1132(g).

## **RELIEF**

51. WHEREFORE, the Plaintiffs seek relief as follows:

52. Judgment in the total amount that is owed for J.P.'s medically necessary treatment at Evoke under the terms of the Plan, plus pre- and post-judgment interest to the date of payment, which totals over $50,000.

53. Appropriate equitable relief under 29 U.S.C. § 1132(a)(3) as outlined in Plaintiffs' Second Cause of Action;

54. Attorney fees and costs incurred pursuant to 29 U.S.C. § 1132(g); and

55. For such further relief as the Court deems just and proper.

DATED this 31st day of May 2022.

STRONG & HANNI

By */s/ Kathleen J. Abke*
 Kathleen J. Abke
 Savanna Jones
 *Attorneys for Plaintiffs*