IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
CIVIL ACTION NO. 3:22-CV-00356-RJC-DSC

| | |
|---|---|
| CAROL P. AND J.P., | )<br>)<br>)<br>) |
| Plaintiffs, | )<br>) |
| v. | )   **MEMORANDUM AND**<br>)   **RECOMMENDATION**<br>) |
| TRULIANT FEDERAL CREDIT UNION, BLUE CROSS BLUE SHIELD OF NORTH CAROLINA, AND TRULIANT FEDERAL CREDIT UNION EMPLOYEE HEALTH PLAN, | )<br>)<br>)<br>)<br>)<br>) |
| Defendants. | ) |

**THIS MATTER** is before the Court on Defendants' Motion to Dismiss, Doc. 26, filed August 4, 2022.

The Motion has been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1) and is now ripe for consideration.

Having fully considered the arguments, the record, and the applicable authority, the undersigned respectfully recommends that Defendants' Motion to Dismiss be **GRANTED**.

## I. FACTUAL BACKGROUND

Accepting the factual allegations of the Complaint as true, Plaintiff Carol P. was a participant in the Truliant Federal Credit Union Employee Health Plan. Her son J.P. was a beneficiary. The Plan is a self-funded employee benefit plan governed by the Employment

1

Retirement Income Security Act of 1974 ("ERISA"). Blue Cross Blue Shield of North Carolina is an insurance company that serves as a third-party claims administrator for the Plan. Doc. No. 2, at ¶ 2. It has discretionary authority to administer claims and interpret eligibility for benefits. See id. at ¶¶ 19–26. From July 21, 2020 through November 24, 2020, J.P. sought treatment at Evoke at Entrada for depression, generalized anxiety disorder, substance use disorders and ADHD as well as other behavioral and family relationship issues.[1] Evoke is an outdoor behavioral health program in Washington County, Utah. It is classified as an intermediate level of care offering services which are less intensive than acute hospitalization but more intensive than outpatient treatment. During his time at Evoke, J.P. participated in psychotherapy sessions and group therapy. Evoke designed an individualized treatment plan and licensed counselors oversaw his progress.

The Plan allows benefits for the treatment of mental illness and substance abuse by a "Hospital, Residential Treatment Facility, Doctor, or Other Provider." It defines a "Residential Treatment Facility" as one that either "offers treatment for patients that require close monitoring of their behavioral and clinical activities related to their chemical dependency or addiction to drugs or alcohol, or . . . offers treatment for patients that require psychiatric services for the diagnosis and treatment of MENTAL ILLNESS." Doc. No. 29-1, Ex. A, at 76 (emphasis in original). The Plan also requires that "[a]ll services performed must be within the scope of license or certification to be eligible for reimbursement." Id. It defines "Other Provider" as "[a]n institution or entity other than a HOSPITAL, which is accredited and licensed or certified in the state where located to provide COVERED SERVICES, and which is acceptable to Blue Cross NC." Id. at 74 (emphasis in original).

---

[1] The Complaint is unclear as to when Evoke discharged J.P. It first alleges Evoke discharged him on October 31, 2020, but subsequently states he was discharged after making "significant improvements" on November 24, 2020.

2

Evoke submitted claims to the Plan for J.P.'s treatment. On December 3, 2020, BCBSNC denied coverage, stating that the treatment fell under code ENB, which means the "[s]ervice [was] not covered for either the primary diagnosis or service code listed." Doc. No. 2, at ¶ 19. Evoke then submitted corrected claims with additional primary diagnosis codes. In February 2021, BCBSNC again denied coverage for treatment under the same code. On May 5, 2021, Carol P. timely submitted a Level One Member Appeal to BCBSNC. In her appeal, she argued that J.P.'s treatment at Evoke was covered under the Plan. She stated that Evoke qualifies as a provider under the Plan and provides Facility Services through outdoor behavior treatment. Carol P. also provided a copy of Evoke's outdoor youth treatment license. See Doc. No. 29-2, Ex. B. On June 4, 2021, the Plan sent her a letter denying the Appeal, stating that Evoke is "not licensed as an inpatient mental health facility. This is an outdoor wilderness therapeutic camp. The claims for these services [sic] denied as noncovered correctly." Doc. No. 27-3, at 4.

Plaintiffs bring causes of action for benefits under 29 U.S.C. § 1132(a)(1)(B) and violation of the Mental Health Parity and Addiction Equity Act under 29 U.S.C. § 1132(a)(3).

## II. DISCUSSION

### 1. Standard of Review

In reviewing a Rule 12(b)(6) motion, "the court should accept as true all well-pleaded allegations and should view the complaint in a light most favorable to the plaintiff." Mylan Labs., Inc. v. Matkari, 7 F.3d 1130, 1134 (4th Cir. 1993). The plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). "[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." Id. at 563. A complaint attacked by a Rule 12(b)(6) motion to dismiss will survive if it contains enough facts to "state a claim to

3

Case 3:22-cv-00356-RJC-DSC   Document 32   Filed 01/25/23   Page 3 of 9

relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 570). "A claim has facial plausibility when the Plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.

In Iqbal, the Supreme Court articulated a two-step process for determining whether a complaint meets this plausibility standard. First, the court identifies allegations that, because they are no more than conclusions, are not entitled to the assumption of truth. Id. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. (citing Twombly, 550 U.S. at 555) (allegation that government officials adopted challenged policy "because of" its adverse effects on protected group was conclusory and not assumed to be true). Although the pleading requirements stated in "Rule 8 [of the Federal Rules of Civil Procedure] mark[] a notable and generous departure from the hyper-technical, code-pleading regime of a prior era ... it does not unlock the doors of discovery for a Plaintiff armed with nothing more than conclusions." Id. at 678–79.

Second, to the extent there are well-pleaded factual allegations, the court should assume their truth and then determine whether they plausibly give rise to an entitlement to relief. Id. at 679. "Determining whether a complaint contains sufficient facts to state a plausible claim for relief "will ... be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id. "Where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not 'show[n]' 'that the pleader is entitled to relief,'" and therefore should be dismissed. Id. (quoting Fed. R. Civ. P. 8(a)(2)).

a. **ERISA Claim**

Section 1132(a)(1)(B) enables an ERISA plan participant or beneficiary "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B). A plaintiff may only recover "[those] benefits [which] are specified in the plan . . . ." Flint v. ABB, Inc., 337 F.3d 1326, 1329 (11th Cir. 2003) (quoting Clair v. Harris Tr. & Sav. Bank, 190 F.3d 495, 497 (7th Cir. 1999)). "[A]n ERISA claimant generally is required to exhaust the remedies provided by the employee benefit plan in which he participates as a prerequisite to an ERISA action for denial of benefits . . . ." Makar v. Health Care Corp. of Mid-Atlantic, 872 F.2d 80, 82 (4th Cir. 1989). Courts will conduct a de novo review of a denial of benefits claim "unless the plan grants the administrator discretion to determine a claimant's eligibility, in which case the administrator's decision is reviewed for abuse of discretion." Greenwell v. Grp. Health Plan for Emps. of Sensus USA, Inc., 505 F. Supp. 3d 594, 601 (E.D. N.C. 2020).

Plaintiffs argue that J.P.'s mental health and substance abuse treatment were covered under the Plan since Evoke was a Residential Treatment Facility, or alternatively, an Other Provider. The Plan defines a "Residential Treatment Facility" as a facility that either "offers treatment for patients that require close monitoring of their behavioral and clinical activities related to their chemical dependency or addiction to drugs or alcohol, or . . . offers treatment for patients that require psychiatric services for the diagnosis and treatment of MENTAL ILLNESS." Doc. No. 29-1, Ex. A, at 76 (emphasis in original). The Plan defines "Other Provider" as "[a]n institution or entity other than a HOSPITAL, which is accredited and licensed or certified in the state where located to provide COVERED SERVICES, and which is acceptable to Blue Cross NC." Id. at 74 (emphasis in original). Both provisions contain an important caveat: "All services performed must be within the scope of license or certification to

5

be eligible for reimbursement." Id. at 74, 76. In order for Plaintiffs to recover, they must demonstrate that Evoke was a residential treatment facility or other provider as defined under the terms of the Plan, and that the services were within the scope with Evoke's licensure.

At the time J.P. received treatment, Utah law defined a "youth program" as a "<u>nonresidential</u> program designed to provide behavioral, substance abuse, or mental health services to minors . . . ." Utah Code § 62A-2-101(45)(a) (2019) (emphasis added). Although Plaintiffs' recovery ultimately depends upon the terms of the Plan, it is relevant that Utah law designated youth programs as nonresidential. But whether or not Evoke satisfied either of those definitions, it was not properly licensed to provide treatment.

Evoke was licensed to provide outdoor youth treatment for seventy clients aged thirteen to seventeen for the period from September 1, 2020 to May 31, 2020. See Doc. No. 29-2, Ex. B. But at the time J.P. arrived at Evoke, it had not yet been licensed as an outdoor youth treatment facility.[2] It would not be an abuse of discretion for Blue Cross to deny benefits under the Plan on the basis that Evoke was not licensed as residential treatment facility or an outdoor youth treatment program at the time of J.P.'s arrival. Accordingly, regardless of whether Evoke was a residential treatment facility, other provider, or outdoor youth program, it did not have a license at the time J.P. arrived to provide residential treatment services and would thus be ineligible for coverage under the Plan.

A recent case in this District is instructive here. In L.L v. Medcost Benefit Servs., a mother sought to recover benefits under ERISA after a third-party claims administrator denied coverage for her daughter's mental health treatment. No. 1:21-cv-00265-MR, 2023 WL 362391

---

[2] The Complaint alleges J.P. arrived at Evoke on July 21, 2020, but Evoke did not receive its license until September 1, 2020 – nearly two months after J.P.'s enrollment. Evoke had also previously been licensed to provide experiential education but that license expired in September 2018.

(W.D.N.C. Jan. 23, 2023). The Court concluded that plaintiff could recover under ERISA for the denial of benefits. Id. at *4. But in that case, the medical provider was both licensed as a residential treatment facility and qualified as a covered facility under the terms of the plan. Id. at *3. Evoke does not qualify under either category. For those reasons, the undersigned respectfully recommends that the Motion to Dismiss Plaintiffs' ERISA claim be granted.

### b. Parity Act Claim

Section 1132(a)(3) authorizes a plan participant or beneficiary to sue "to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or . . . to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of the subchapter or the terms of the plan." 29 U.S.C. § 1132(a)(3). The Parity Act requires that if a group health plan provides both medical and surgical benefits as well as mental health or substance abuse disorder benefits, it must not apply any "treatment limitation to mental health or substance abuse disorder benefits . . . that is more restrictive than the predominant . . . treatment limitation of that type applied to substantially all medical/surgical benefits in the same classification." 29 C.F.R. § 2590.712(c)(2)(i) (2023). Examples of improper limitations include but are not limited to medical management standards limiting or excluding benefits based on medical necessity; restrictions based on geographic location; facility type; provider specialty; and other criteria that limit the scope or duration of benefits for mental health or substance abuse disorder treatment. 29 C.F.R. § 2590.712(c)(4)(ii)(A), (H) (2023).

Claims for equitable relief under this Section are barred when "[a] plaintiff whose injury consists of a denial of benefits has adequate relief available for the alleged improper denial of benefits through his right to sue the benefit plan directly under section 1132(a)(1), and thus relief through the application of Section 1132(a)(3) would be inappropriate." Korotynska v. Metro.

Life Ins. Co., 474 F.3d 101, 107 (4th Cir. 2006). "The allegations made [here] are routinely taken up in appeals of benefits denials, and they do not constitute special circumstances for which equitable relief is uniquely appropriate." Id. at 108. If equitable relief were available here, "every wrongful denial of benefits could be characterized as a breach of fiduciary duty." Id. (quoting Coyne v. Delany Co. v. Blue Cross Blue Shield of Va., Inc., 102 F.3d 712, 714 (4th Cir. 1996) (internal quotations omitted) (emphasis original)).

Plaintiffs argue that Korotynska does not mandate dismissal of their Parity Act claim since this claim is alternative and not duplicative of the ERISA claim. Plaintiffs also assert that the relief sought under the Parity Act claim is distinct. But the standard is not whether the relief sought is distinct. It is whether "relief is potentially available to [a plaintiff] under § 1132(a)(1)(B) . . . ." Korotynska, 474 F.3d at 106. "Plaintiff's approach would promote § 1132(a)(3) from 'safety net' to first line of attack, an outcome at odds with both the plain language of § 1132(a)(1)(B) and the statutory structure of § 1132." Id. at 108. Here, Plaintiffs' underlying injury is the same – Defendants' denial of benefits under the Plan. Plaintiffs have a cause of action against the Plan directly under § 1132(a)(1)(B). "[T]hus, relief through the application of Section 1132(a)(3) would be inappropriate." Id. at 107. For those reasons, the undersigned respectfully recommends that the Motion to Dismiss Plaintiffs' Parity Act claim be granted.

### III. RECOMMENDATION

FOR THE FOREGOING REASONS, the undersigned respectfully recommends that Defendants' Motion to Dismiss, Doc. 26, be **GRANTED**.

### IV. NOTICE OF APPEAL RIGHTS

The parties are hereby advised that, pursuant to 28 U.S.C. §636(b)(1)(c), written objections to the proposed findings of fact and conclusions of law and the recommendation contained in this Memorandum must be filed within fourteen days after service of same. Failure to file objections to this Memorandum with the Court constitutes a waiver of the right to de novo review by the District Judge. <u>Diamond v. Colonial Life</u>, 416 F.3d 310, 315–16 (4th Cir. 2005); <u>Wells v. Shriners Hosp.</u>, 109 F.3d 198, 201 (4th Cir. 1997); <u>Snyder v. Ridenour</u>, 889 F.2d 1363, 1365 (4th Cir. 1989). Moreover, failure to file timely objections will also preclude the parties from raising such objections on appeal. <u>Thomas v. Arn</u>, 474 U.S. 140, 147 (1985); <u>Diamond</u>, 416 F.3d at 316; <u>Page v. Lee</u>, 337 F.3d 411, 416 n.3 (4th Cir. 2003); <u>Wells</u>, 109 F.3d at 201; <u>Wright v. Collins</u>, 766 F.2d 841, 845–46 (4th Cir. 1985); <u>United States v. Schronce</u>, 727 F.2d 91 (4th Cir. 1984).

The Clerk is directed to send copies of this Memorandum and Recommendation to counsel for the parties <u>and to the Honorable Robert J. Conrad, Jr</u>.

**SO ORDERED**.

Signed: January 25, 2023

David S. Cayer
United States Magistrate Judge